UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MEGAN A. AHLSTROM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No. 4:13CV478NCC |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Megan A. Ahlstrom (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 19). Defendant has filed a brief in support of the Answer. (Doc. 28). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 27).

**I.
PROCEDURAL HISTORY**

Plaintiff filed her application for DIB, alleging a disability onset date of January 7, 2007. (Tr. 13, 144-47). Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 92, 94-95). After two hearings, in a decision dated October 18, 2011, the ALJ found Plaintiff not disabled. (Tr. 19-29). Plaintiff filed a request for

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

review with the Appeals Council, which denied Plaintiff's request on January 8, 2013. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589;

4

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

>(1) the claimant's daily activities;
>
>(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
>(3) any precipitating or aggravating factors;
>
>(4) the dosage, effectiveness, and side effects of any medication; and
>
>(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ

6

need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v.

7

Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was 32 years old on her alleged onset date, testified she had a bachelor's degree in archeology and religion, and, while in college, she received assistance through the Center for Students with Disabilities; an individual helped her schedule her classes; she received her books on tape; she had extra time to complete her exams; and she was able to take her exams orally. (Tr. 78-79). Plaintiff further testified that pain, fatigue, and "mind fog" limited her ability to work; she could lift "maybe" 10 pounds and walk for "a while" before she gets fatigued and has to sit; she can stand for 5-10 minutes at a time; she did not have any limits in how long she could sit; and she had to lie down and rest 4-6 times a day for 15 minutes to 2 hours. (Tr. 41, 64, 68-69). She also testified that her pain is normally 7-8 on a 10-point scale. (Tr. 70).

The ALJ found Plaintiff last met the insured status requirement on September 30, 2007; she had not engaged in substantial gainful activity from her alleged onset date, January 7, 2007, through her last insured date; she had the severe impairments of fibromyalgia and post-traumatic stress disorder (PTSD); and Plaintiff did not have an impairment or combination of impairment that met or medically equaled the severity of a listed impairment through the date she was last insured. The ALJ found that Plaintiff had the following RFC: she could perform a limited range

8

of light work, in that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk 6 out of 8 hours; she had no sitting limit; and she could occasionally climb stairs and ramps, never climb ladders, ropes, or scaffolds. The ALJ further found that Plaintiff could "do no more than frequent balancing, bending, stooping, or crouching; no more than occasional crawling; avoid exposure to unprotected heights, cold weather, and humidity; was limited to simple tasks and instructions only; and no more than occasional interaction with the public, coworkers, and supervisors." The ALJ concluded that Plaintiff was unable to perform any past relevant work; there were jobs in the national economy which a person of Plaintiff's age and education and with her RFC could perform; and, therefore, Plaintiff was not disabled.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to follow the de minimus standard at Step 2 of the sequential evaluation process, and found Plaintiff's chronic fatigue was not severe. Plaintiff argues the ALJ made a non-severe finding despite evidence which "easily satisfie[d] the standard of at least a 'slight abnormality' with a 'minimal effect' on work-related functioning."[2] (Doc. 19 at 10-11).

**A.    Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's fatigue. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the

---

[2] In her Brief in Support of Complaint, Plaintiff does not challenge the ALJ's findings regarding her post-traumatic stress disorder or in regard to her testimony, at the hearing, regarding her "mind fog." (Doc. 19).

ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that that the objective medical did not support Plaintiff's allegations. See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (while ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, ALJ is entitled to make factual determination that claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. §§ 416.908, 416.929). As considered by the ALJ, Plaintiff alleged she experienced debilitating fatigue and physical pain, which made it difficult for her to walk. Nonetheless, on October 8, 2007, it was reported that she had normal strength and she was intact neurologically. (Tr. 293). On March 13, 2008, her musculoskeletal neurological systems were intact. (Tr. 294). On May 18, 2008, she had full range of motion, no edema, and 5/5 strength. (Tr. 308). On August 4, 2008, Plaintiff had no weakness or numbness; her strength and gait were normal, and "nothing appear[ed] suspicious." (Tr. 372). A September 22, 2008 nerve conduction study was normal. (Tr. 382). Examination of this date showed normal motor, sensory, and coordination exams, and normal gait and reflexes. Noting there was no electrophysiologic evidence of primary neuromuscular disease and no evidence of demyelinating disease or an endocrine disturbance, the impression was probable fibromyalgia, with chronic fatigue syndrome. (Tr. 386).

On October 24, 2008, a motor exam showed normal muscle bulk, tone, and strength, and no atrophy or abnormal movements; Plaintiff's sensory exam was symmetrical to touch and vibration; her finger-nose and individual leg movements were normal; her gait was smooth; and her reflexes were "2 and symmetrical"; and the impression was "nonspecific muscle pain and fatigue syndrome consistent with fibromyalgia and chronic fatigue." (Tr. 380-81). On March 11, 2009, Plaintiff's motor exam revealed normal muscle bulk, tone, and strength; she did have "significant tenderness over the cervical and thoracic regions and the upper shoulders, mid back

and some in the lower legs"; her sensory and coordination exams were normal; her gait was smooth; her reflexes were "2 and symmetrical." The impression was "nonspecific muscle pain and fatigue syndrome consistent with fibromyalgia and chronic fatigue." (Tr. 390).

In May 2009, a musculoskeletal examination showed normal range of motion and no edema, although multiple tender points were noted; as for her neurological exam, Plaintiff was alert and oriented, had normal strength, displayed normal reflexes, had no cranial nerve deficit, and had normal coordination; and her speech, behavior, and thought content were normal. (Tr. 415-16). On June 9, 2009, when Plaintiff had a routine gynecological exam, examination of Plaintiff's extremities showed intact distal pulses, equal movement in extremities, no edema or tenderness in the calves or thighs, normal strength, and normal tone. It was noted, on this date, that there were "no associated orders" for Plaintiff's fibromyalgia. (Tr. 440-41). On July 11, 2009, Plaintiff had normal range of motion, no edema or tenderness, and normal muscle tone, and her coordination was normal. (Tr. 542). On August 14, 2009, Plaintiff was negative for myalgias and back pain, had normal range of motion, and had no cranial nerve deficit. (Tr. 547-48). On February 15, 2010, she was not in any distress, and had normal range of motion. (Tr. 557-58). Again, on February 23, 2010, Plaintiff was negative for myalgias and back and joint pain; examination of her neurologically showed she was negative for dizziness, tingling, weakness, and headaches. She had normal range of motion and no cervical adenopathy, and an EKG was "essentially normal." (Tr. 565-66). On June 16, 2010, Plaintiff had normal range of motion, and she was negative for dizziness and headaches. (Tr. 576).

As for Plaintiff's allegation that she could not work because of "mind fog," forgetfulness, and difficulty concentrating, as noted by the ALJ, Plaintiff's mental-status examinations were relatively unremarkable. (Tr. 26). For example, she often exhibited normal attention,

12

concentration, and fund of knowledge. (Tr. 380, 386, 389, 301). Additionally, her memory was intact on numerous occasions. (Tr. 331, 380, 386, 389, 391, 394). Plaintiff was also often reported to be alert, pleasant, cooperative, and oriented at her appointments. Significantly, on August 4, and October 24, 2008, when Plaintiff reported having "brain fog," and feeling "mentally foggy since about 2000," respectively, a neurological examination showed she was alert, she was able to answer questions normally, her speech was fluent, and "nothing appear[ed] suspicious." (Tr. 372, 380). Then on September 22, 2008, Plaintiff was awake, alert, oriented, and had normal memory, concentration, and fund of knowledge. (Tr. 394). The court finds, therefore, that substantial evidence supports the ALJ's determination that objective medical evidence did not support Plaintiff's allegations.

Second, the ALJ considered Plaintiff generally received conservative treatment. Conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. (Tr. 24-15). See Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) (affirming ALJ's credibility determination based in part on claimant's doctors having recommended exercise and medication but never surgery); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Specifically, in October 2008, Alan W. Martin, M.D., encouraged Plaintiff to proceed with a low intensity regular aerobic exercise program, and, in March 2009, encouraged her to continue with regular exercise. (Tr. 381, 390). See Blakeman v. Astrue, 509 F.3d 878, 883 (8th Cir. 2007) (doctor's advice to become more physically active was inconsistent with disability).

Third, the ALJ considered that, although Plaintiff alleged she used a cane, none of her providers prescribed an assistive device for ambulation. (Tr. 25). In fact, a doctor's July 23, 2010 notes reflect that Plaintiff was not using an assistive device. (Tr. 479). The failure to use

an assistive device detracts from a claimant's credibility. See e.g., Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006). See also Schroeder v. Sullivan, 796 F. Supp. 1265, 1270 (W.D. Mo. 1992) (holding that the claimant's need to take naps was not documented in the record and because the claimant failed to complain to his doctors about drowsiness, "contradict[ed] his assertion that he must nap during the day"; "It is as likely that Plaintiff chooses to nap at times he might otherwise choose to remain awake.").

Fourth, the ALJ considered that none of Plaintiff's doctors opined that she was unable to work due to physical limitations. (Tr. 25). See Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.").

Fifth, Plaintiff reported that she made simple dinners, was independent in her own personal care, read the bible, handled her own finances, played video games, helped with chores and cooking when she had enough energy, took care of pets, drove, went out alone, used a computer to send e-mails and browse the internet, took her husband to work and picked him up for lunch, utilized public transportation, shopped, socialized with others, went to friends' houses, "hung out" at McDonald's, went to the movies and Harry Potter conventions, traveled to Russia, regularly exercised, and put clothing in the washing machine. (Tr. 38, 72-75, 78, 83-84, 225-31, 234, 371, 389, 413, 437, 478-79).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the

credibility of complaints. See Eichelberger, 390 F.3d at 590 (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Sixth, the ALJ considered it significant that Plaintiff worked after her alleged onset date, although not at the substantial gainful activity level. (Tr. 27). Plaintiff claimed a January 7, 2007 onset date, but she reported that she worked an average of three hours a day from August 2007 to February 2008. (Tr. 168). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. See also Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It

was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

Seventh, the ALJ considered Plaintiff's poor work history. (Tr. 17). For example, Plaintiff had earnings of $1,777.77 in 2001, $1,565 in 2002, and no earnings in 2004. (Tr. 163). A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. See Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. See Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Ellis v. Barnhart, 392 F.3d 988, 966 (8th Cir. 2005) (ALJ could discount claimant's credibility in part based on his not having worked for seven years preceding his SSI application; Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found claimant not credible due in part to his sporadic work record reflecting relatively low earnings and multiple years with no reported earnings).

In conclusion, the court finds that the ALJ's credibility determination and considerations are based on substantial evidence.

**B.     Severity of Plaintiff's Chronic Fatigue Syndrome:**

The ALJ found that Plaintiff's chronic fatigue syndrome was a medically determinable impairment, but that it was not severe. (Tr. 21). Plaintiff argues the ALJ erred in finding her chronic fatigue syndrome non-severe. (Doc. 19 at 10-14).

As stated above, at Step 2 of the sequential analysis, an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v.

Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). A plaintiff has the burden of establishing a severe impairment. See Kirby, 500 F.3d at 707. For the following reasons, the court finds that the ALJ's determination that Plaintiff's chronic fatigue syndrome was non-severe is supported by substantial evidence.

First, Edith Winkler, M.D., who is board certified in internal medicine and rheumatology, testified as a non-examining medical expert. Dr. Winkler testified that she could not confirm that Plaintiff had chronic fatigue syndrome because Plaintiff appeared to have significant mental-health issues, which might have explained her purported fatigue. (Tr. 45, 47–49). Dr. Winkler also explained that a diagnosis of chronic fatigue syndrome required other physical findings that were not documented in the medical evidence. (Tr. 47-48). Despite Dr. Winkler's testimony, as stated above, the ALJ gave Plaintiff the benefit of the doubt and found that her chronic fatigue syndrome was a medically determinable impairment, albeit non-severe.

Second, upon finding that Plaintiff's chronic fatigue syndrome was non-severe, the ALJ relied upon the fact that Plaintiff's providers often described her condition as "stable" or reported that Plaintiff was doing well with her fatigue. (Tr. 21, 504, 528, 641). The ALJ also found it significant that there was extremely limited evidence of fatigue during the period at issue. (Tr. 21).

Third, as considered by the ALJ, references to Plaintiff's chronic fatigue syndrome in the record were based on Plaintiff's self-reporting of past diagnosis. (Tr. 21).

Fourth, as discussed above in regard to Plaintiff's credibility, medical examination showed that Plaintiff had good strength and coordination, normal range of motion, normal muscle bulk and tone, normal gait, and no atrophy or abnormal movement. Examination also showed she had normal attention, concentration, and a fund of knowledge, she was alert and oriented, and her behavior, judgment, and thought content were normal.

Fifth, as noted by the ALJ, it was reported that Plaintiff was doing well with her fatigue. (Tr. 21, 528).

Sixth, Plaintiff's last date insured was September 30, 2007, but she was not diagnosed with chronic fatigue syndrome until September 22, 2008. (Tr. 286). A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of Social Security disability benefits. See Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir. 1991); Dunlap v. Harris, 649 F.2d 637, 639 (8th Cir. 1981).

The court finds, therefore, that the ALJ's determination that Plaintiff's chronic fatigue syndrome was non-severe is based on substantial evidence and that Plaintiff's argument to the contrary is without merit.

**C.    Plaintiff's RFC:**

Plaintiff argues the ALJ did not include her chronic fatigue syndrome when formulating her RFC. Plaintiff is incorrect as the ALJ limited Plaintiff to light work with various environmental imitations described above. To account for Plaintiff's alleged "mind fog," the ALJ limited Plaintiff to simple tasks and instructions, and to only occasional interaction with others. To the extent Plaintiff claims the ALJ should have included greater limitations than he did, the ALJ considered all of Plaintiff's limitations which he found credible when formulating

18

Plaintiff's RFC, and included limitations which he found credible. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (internal quotations and citations omitted). Additionally, as discussed above in regard to Plaintiff's credibility, the ALJ considered the medical evidence of record upon formulating Plaintiff's RFC. See Lauer, 245 F.3d at 704 (although assessing claimant's RFC is primarily ALJ's responsibility, claimant's RFC is a medical question). In conclusion, the court finds that Plaintiff's argument that the ALJ should have imposed greater limitations is without merit. Finally, the court finds that the ALJ's RFC determination and his ultimate conclusion that Plaintiff was not disabled are supported by substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 19) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 23nd day of September 2014.

                                              /s/ Noelle C. Collins
                                              NOELLE C. COLLINS
                                              UNITED STATES MAGISTRATE JUDGE